IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KRISTEN M. LEONARD** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| **MONTGOMERY INSURANCE SERVICES, INC.** | : | **NO. 02-4156** |

**MEMORADUM ORDER**

This case arises from defendant's alleged discrimination based on plaintiff's gender. Plaintiff has asserted claims for violations of Title VII and for retaliation. Presently before the court is defendant Montgomery Insurance's Partial Motion to Dismiss Count I with prejudice as to any claims predicated on events prior to September 10, 1999, Dismiss Count II for a failure to exhaust administrative remedies, and to strike plaintiff's punitive damages claim pursuant to F.R.C.P. 12(b)(6).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim while accepting the veracity of the claimant's allegations. See Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987); Winterberg v. CNA Ins. Co., 868 F. Supp. 713, 718 (E.D. Pa. 1994), aff'd, 72 F.3d 318 (3d Cir. 1995). In addressing such a motion, a court may also consider matters of public record, including documents memorializing decisions of governmental agencies, and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a

defendant's motion. See Churchill v. Star Enter., 183 F.3d 184, 190 n.5 (3d Cir. 1999); Beverly Enter., Inc. v. Trump, 182 F.3d 183, 190 n.3 (3d Cir. 1999), cert. denied, 120 S. Ct. 795 (2000); In re Burlington Coat Factory Sec. Lit., 114 F.3d 1410, 1426 (3d Cir. 1997); Arizmendi v. Lawson, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996). Employing this standard, the pertinent facts for purposes of this motion are as follow.

Defendant is a Pennsylvania corporation doing business in Media, Pennsylvania. Jurisdiction is based on 42 U.S.C. § 2000(e) et seq.

### A. Summary of Plaintiff's Allegations

Plaintiff began working for the defendant as a personal line producer on August 17, 1998. Plaintiff was the only female producer and she was treated differently than other producers. Defendant discouraged her from taking on commercial accounts. She also received lower percentage commissions of 25% while the other line producer, Jay Ashworth, received commissions of 40%.

Defendant also did not provide plaintiff with a car allowance for much of her first year of employment while Mr. Ashworth and Mike Detta, a life line producer, received their automobile allowances of $350 at the start of their employment. Moreover, once defendant did offer plaintiff an automobile allowance, it initially offered her only $150. Ultimately,

defendant did provide her with a $350 allowance, but deducted $262 from her salary.

Moreover, when plaintiff began working with the defendant, her office did not contain any chairs to seat clients. Meanwhile, defendant provided Mr. Ashworth with a fully furnished office upon starting. This prompted plaintiff's realization that defendant treated Mr. Ashworth better than it treated her. As a result, she spoke to Don Hosier, the supervisor of the commercial lines, about how she believed defendant treated her differently than Mr. Ashworth because of her sex.

In July 1999, Mr. Hosier provided plaintiff with a lead about a potential client that Mr. Ashworth had failed to contact for over two weeks. Plaintiff immediately contacted the customer and promised an insurance quote within two days. Steve Montgomery, plaintiff's immediate supervisor, then spoke with this potential client and criticized plaintiff about failing to meet company guidelines requiring that clients be provided with a price quote within two days. When plaintiff attempted to explain to Mr. Montgomery that the lead had originally been assigned to Mr. Ashworth and that she had only been given the client's name two days ago and was therefore in compliance with defendant's rule, he refused to listen. Defendant did not discipline or confront Mr. Ashworth for his failure to follow defendant's policy.

As a result of this incident, plaintiff told Mr. Montgomery that she believed that defendant treated her differently than Mr. Ashworth.

In August 1999, plaintiff had scheduled a vacation. Before departing, Mr. Hosier demanded that both plaintiff and Mr. Ashworth compile a list or prospective clients and their current status. Plaintiff had 42 clents listed, all of whom had been called back and provided with quotes, whereas Mr. Ashworth had 38 accounts listed, but 18 still required quotations.

On September 13, 1999, defendant fired plaintiff without providing an explanation. Plaintiff filed a complaint with the EEOC on July 7, 2000. She received a right to sue letter from the EEOC on April 2, 2002, and subsequently filed this suit.

**B.   Analysis**

Defendant first moves to limit plaintiff's claims for sex discrimination to events that occurred on or after September 10, 1999, because they contend that earlier events are time barred. Plaintiff contends that the alleged discriminatory conduct occurred between August 17, 1998, through her termination on September 13, 1999.

Under Title VII, an employee must file a charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days or with an equivalent state

agency within 300 days of the allegedly discriminatory action. 42 U.S.C. 2000e-5(e)(1); <u>Communications Workers of Am. V. New Jersey Dep't of Pers.</u>, 282 F.3d 213, 218 (3d Cir. 2002); <u>Robinson v. Dalton</u>, 10 F.3d 1018, 1020-21 (3d Cir. 1997); <u>Mroczek v. Bethlehem Steel Corp.</u>, 126 F. Supp. 2d 379, 385-86 (E.D. Pa. 2001).  Here, plaintiff filed her charge alleging sex discrimination with the PHRA on July 7, 2000.  Consequently, any claim based on incidents of discrimination that occurred prior to September 10, 1999, is time-barred unless the plaintiff can establish a continuing violation.  <u>See</u> <u>Rush v. Scott Specialty Gases, Inc.</u>, 113 F.3d 476, 481 (3d Cir. 1997).

To establish a continuing violation, the plaintiff must allege a hostile work environment and show that the act occurring within the limitations period was part of an ongoing practice or pattern of discrimination.  <u>See</u> <u>id.</u>; <u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 754 (3d Cir. 1995).  The Supreme Court recently addressed the continuing violation theory and limited its application to claims such as hostile work environment where the nature of the claim is ongoing discrimination and one example of the discrimination does not prove the charge.  <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 122 S. Ct. 2061, 2072 (2002).  The Court held that Title VII "precludes recovery for

discrete acts of discrimination or retaliation that occur outside the statutory time period." Id. at 2073.[1] These acts:

> are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete act starts a new clock for filing charges alleging that act. . . . The existence of past acts and the employee's knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

Id. at 2072. Accordingly, prior discrete discriminatory acts occurring outside Title VII's limitations period are not actionable. Id. at 2073.

Here, plaintiff alleges that defendant discriminated against her by paying her a lower commission rate than her male coworkers, by not providing her with an automobile allowance immediately after she started work while a male coworker received it from the outset, and by not providing her an office with client chairs when she first began working while her male coworker's office had chairs. Each of these alleged acts cited by plaintiff is discrete and cannot form the basis of a continuing violations claim. See Bazemore v. Friday, 478 U.S.

---

[1] Discrete acts include each unlawful termination, denial of transfer, failure or refusal to hire or other related acts that discriminate against an individual with respect to her compensation, terms, conditions, or privileges of employment because of her sex. See National R.R. Passenger Corp., 122 S. Ct. at 2070-73.

385, 395-96 (1986)(holding that "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII."); Pollis v. New Sch. for Social Research, 132 F.3d 115, 119 (2d Cir. 1997)(holding that recurring pay discrimination does not constitute a continuing violation because each receipt of a paycheck is the basis for a separate cause of action for which suit must be brought within the limitations period); Dasgupta v. Univ. of Wisconsin Bd. Of Regents, 121 F.3d 1138, 1140 (7th Cir. 1997); Inglis v. Buena Vista Univ., 235 F. Supp. 2d 1009, 1023-24 (N.D. Iowa 2002)(holding that receipt of allegedly discriminatory pay is a discrete act of gender discrimination which occurs on a particular day is not actionable if time barred).

Further, plaintiff's complaint fails to show that the plaintiff can prove any set of facts in support of a hostile work environment claim that would entitle her to relief on a continuing violations theory.  A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult so severe and pervasive as to alter the conditions of the victim's employment and create an abusive working environment.  See Harris v. Florlift Sys., Inc., 510 U.S. 17, 21 (1993).  Incidents of harassment are pervasive if they occur in concert or with regularity.  See Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990).  All of

plaintiff's claims concern disparate treatment as the factual portion of her complaint only lists instances of differential treatment in relation to another employee.  Accordingly, the continuing violations theory is not applicable in this case and plaintiff's claims must be limited to acts that occurred on or after September 10, 1999.  The Court does not now rule whether plaintiff may be able to introduce some facts into evidence at trial which took place prior to September 20, 1999.

Defendant also moves to have plaintiff's retaliation claim dismissed because plaintiff did not include it in her administrative charge and failed to exhaust her administrative remedies.

In a Title VII suit, a plaintiff must exhaust her administrative remedies by first filing with the appropriate agency.  See Churchill v. Star Enter., 183 F.3d 184, 190 (3d Cir. 1999).  The judicial complaint is then limited to the reasonable scope of the complaint filed with the agency and the investigation arising from the charge.  See Antol, 82 F.3d at 1295; Fugarino v. Univ. Servs., 123 F. Supp. 2d 838, 841 (E.D. Pa. 2000); Reddinger v. Hosp. Cent. Servs., Inc., 4 F. Supp. 2d 405, 409 (E.D. Pa. 1998).  A judicial complaint is within the scope of the administrative charge or its subsequent investigation when there is a close connection between the facts supporting each claim or where additional charges made in the

judicial complaint could be considered explanations for the original charge or stem from it. See Fakete v. Aetna Inc., 152 F. Supp. 2d 722, 732 (E.D. Pa. 2001).

Here, although the plaintiff concedes she failed to check the "retaliation" box on her on her administrative complaint, the complaint does provide information that constitutes notice of a retaliation claim. In her administrative complaint, plaintiff wrote that she complained to defendant several times that her office lacked chairs for her clients, but that only after she stated that she believed defendant was discriminating against her did she finally receive the chairs. These facts alleged in the administrative complaint when considered in light of her subsequent termination show that a retaliation claim is within the scope of the EEOC charge or the investigation arising therefrom. See Mullen v. Toppers's Salon & Healthcare Spa, Inc., 99 F. Supp. 2d 553, 556, 556 n.6 (E.D. Pa. 2000)(holding that although the plaintiff did not allege retaliation in her administrative complaint, the retaliation claim was within the scope of her administrative complaint because it contained allegations that she had complained about discrimination on numerous occasions); see also Ivory v. Radio One, Inc., 2002 U.S. Dist. LEXIS 5672, *7-8 (E.D. Pa. 2002)(holding that a retaliation claim was within the scope of the facts alleged in plaintiff's administrative complaint

regarding complaints to management about an abusive work environment).  Accordingly, defendant's failure to exhaust argument is rejected.

Finally, defendants contend that plaintiff failed to state a claim that would entitle her to punitive damages because the conduct described by plaintiff does not support the awarding of punitive damages.  Punitive damages are available under Title VII when the employer acts with "malice or reckless indifference to the [plaintiff's] federally protected rights."  <u>Kolstad v. American Dental Ass'n</u>, 527 U.S. 526, 529 (1999).  Without the benefits of discovery, the court finds it is premature to dismiss the plaintiff's claim for punitive damages.

**ACCORDINGLY**, this         day of April, 2003, upon consideration of defendant Montgomery Insurance Services, Inc.'s Partial Motion to Dismiss (Doc. #4) and plaintiff's response thereto, consistent with the foregoing, **IT IS HEREBY ORDERED** that said Motion is **GRANTED** in part; any claims predicated on discriminatory conduct which occurred prior to September 10, 1999 are **DISMISSED,** and said Motion is otherwise **DENIED.**

                                        **BY THE COURT:**


                                        _____
                                        **Michael M. Baylson, J.**

O:\CIVIL\Leonard v. Montg. Ins. Services 02-4156 (waldman).wpd